Larry Shapiro, Partner, Civil Dunlop, Appellant, Ambassador Press, Inc. Ambassador spent more than $1.6 million buying a large digital press, and it did so on the basis of two representations that it claims to have been false. And the two categories are important here. One had to do with the speed of the printer, and the other had to do with the durability of the printheads. Printheads are a big deal, because if you had to replace all 64 of them, you're talking about over $800,000. In dismissing Ambassador's complaint, the first thing that the district court did was question the plausibility of the allegations as to falsity of the representations. In making that holding, though, it's interesting that the district court only discussed the printhead issue, entirely overlooking the separate allegations about falsity of the speed representations. And there's another thing that the district court overlooked, which is extremely important. The allegations in paragraph 15 of the complaint, that for a period of three full years, Durst lied to Ambassador about the number of printheads that had been replaced. Well, Counsel, but you say in your complaint that the representations are in 8 and 10, right? So is 15 just background music? No, 15 is what deals with the lies that were told afterwards, which we believe goes to fraudulent intent. They would not have lied about the number of printheads. Oh, it's background music, because you define the fraudulent representations as 8 and 10. You put in quote marks and define them. And, Your Honor, as I'll point out a little bit down the road, I would state that there are other allegations that are relevant, too, and I will touch on those. But those certainly are the representations, and they deal with both speed and printheads. And the point here is that the court overlooked speed entirely. What I'd like to do is talk about those representations as to which the court did focus, and that is the printheads. And what the court held, and here's its language, is that Ambassador didn't show factual content showing the summary of past printers was false. Factual content. Now, historical information, testing data, all that information was in Durst's sole possession and not available to Ambassador without discovery. The question, then, is what are plaintiffs like Ambassador to do when direct evidence of fraud is solely in the possession and control of the defendant? Well, when you make a fraud claim, you're making a statement that the defendant has made a statement that is objectively false. And so the pleading requirements require you to state what that objective statement of falsehood is. And I think the district court is saying you haven't done that. That's certainly what the district court said, and I understand. Why is that in error here when much of what seems to be discussed and cited sounds like advertisement and puffing of a product as opposed to a factual representation? In your honor, to answer that, I would look to this court's decision in Drobnik, which is cited in our papers. Drobnik is very instructive because what it said is that when the information that the plaintiff has about the falsity of the allegations is within its experience, within its information, and within its belief, and I quote this court, the facts constituting the fraud are peculiarly within the opposing party's knowledge. We do have a right to allege that on the basis of our information, experience, and belief. And that's exactly what Ambassador did here. Is that case pre or post Twombly? It is post. That decision was in 2009, and the decisions you're referring to started in 27. Sounds like a conflict to me. Well, your honor, there is an interesting conflict here because the district court found as to the falsity of the allegations that we're talking about, that the feeling was on plausibility. In other words, Rule 8, there was no issue about Ambassador having satisfied 9B, which is the heightened pleading standard as to fraud. Well, what is there that provides, that's pled, that provides a plausible interpretation that they knew either the speed representation or the printer head representation was false at the time they made it? And your honor, that goes to the heart of it. What we pled was in that the print heads failed at a rate that wasn't just a little bit higher than represented. It was 800% higher. And you think that alone is enough to show, to infer plausibly that they knew the representation was false? I would say yes, but we don't need to rest on that, your honor, because what we then have, and it's what we spoke about a minute earlier with Judge Benton, is the three years in which they lied and deceived us about how many print heads had been replaced. Wasn't that significantly later? It was in the three years following the purchase. That's correct. So you think that provides a plausible inference that they knew at the time they made the representation that it was false? It certainly goes to intent. And your honor, this is a printer that wasn't new to the market. They had been selling it. They have experience of other customers. And if you look at the representations they made to us that are in writing and detailed in the complaint, they are saying in the year once the printer is outside the warranty period, in that year later, they've got one that had only one print head failure. They've got another one that had two, and that the worst case scenario is six. Your honor, we were 800% more than that. We believe that the court making reasonable inferences in favor of the non-moving party certainly should have concluded that there was enough to state a fraud claim that Durst knew that its representations were false. And this was not just a matter of advertising puffery. Well, it sounds also like you may have had more of a contract action for a product that just was a lemon and failed of its consideration, and you're entitled to get your money back, as opposed to a proof of an objective inducement to a transaction. Interesting point, your honor. If it weren't for the three years of lies and we had known about how many print heads when we asked how many were being replaced, if we had been told the truthful answer, we might have been here with a warranty or a contract claim, but that's not the situation that we had. And your honor, I would submit that if plaintiffs are required at a pleading stage before any discovery to produce direct evidence that's solely in the hands of the party making the false statements, or if the falsity is something that we have to prove through other than our own experience, you're going to dismiss virtually every common law fraud claim. Back to the breach of warranty, breach of contract, because I had the same question when I was, why wasn't this just a simple breach of warranty, are you saying the three years put you past the statute of limitations? Contractually. We did not have a contractual remedy under a warranty claim by the time... What is the statute in, this is Minnesota, right? Yes, this is Minnesota. And is it a three-year statute or something? In Minnesota, under the statute, it would be six years for a contract claim, but this is not a statutory claim because the contract preempted the statutory scheme. The warranty claim was more limited. For a common law contract in Missouri, it's five years, what is it for a common law contract in Minnesota? Six. Thank you. But that's not what's applicable because the contract modified that, the warranty did not extend that long. So did the bulk of the failures occur post-warranty expiration? Is that why this isn't a warranty claim? There were 29 failures during the warranty period about which Durst lied and didn't come clean on to our client. There were, I want to say, and Your Honor, I'll have to check the number before I get it for my rebuttal, but I believe 54 total failures to date. Okay. And, you know, one of, question, Your Honor, or may I proceed? No, no, I was looking at your time. I see my time and I want to reserve a little bit of time for rebuttal and I better do that now. Thank you. Thank you, Mr. Shapiro. Mr. Marco? May it please the Court, Kevin Marco for Appley Durst Image Technologies with me at Council's my partner Gary Rosen, who was on the brief. I see the Court has picked up on the elephant in the room, which is the absence of a contract claim here. I think the Court realizes that if it were to fashion a fraud remedy based on the facts pled in this case, you run the risk of converting every Gordon Variety contract claim into what ostensibly would be a fraud claim. Here there was a limited warranty that was negotiated for. The customer, Ambassador, operated this printer for four years, night and day, in exclusive possession of the printer, and it does not, it could not certainly match a fraud claim. Now, Council pointed directly, and I'm going to go off script a little bit, to the Drobnak case for his, in support of the fraud claim. Drobnak is actually quite harmful to their information and belief theories. Drobnak carved out some exception to the prohibition against information and belief pleadings in fraud cases. Judge Grinder, I don't believe it's a conflict, but I don't think the Court actually needs to get that far. In Drobnak, that was a case against a window manufacturer, and there was some argon gas insulation between panels, and what the plaintiffs alleged in a class action, it was a consumer class action, but there was a common law fraud case as well, was that the manufacturer didn't have sufficient levels of gas, and it was selling a product that didn't exist. Material misrepresentations of non-variable performance, non-variable performance with respect to the argon gas. This Court in Drobnak, and it was 2009, so it was post-Twombly, post-Iqbal, said, when the facts constituting the fraud are peculiarly within the opposing party's knowledge, however such facts may be pled on information and belief. Rule 9b is deemed satisfied if the allegations are accompanied by a statement that the facts on which the belief is founded are peculiarly within the opposing party. Now it's that last part, and Judge Erickson picked up on that language in the order. The facts and information exclusively or uniquely within Durst's knowledge in this case, there was no such allegation made. Wait, wait, wait, they've got one. Over the next three years, Durst hid from Ambassador Trudeau and had paragraph 15. What do you say about paragraph 15? Well, certainly that wouldn't be a reliance in support of an allegedly fraudulent purchase that was made in July of 2013. It's certainly getting into factual content, but it's not a plausible claim of fraud. It's not a material misrepresentation that induced detrimental reliance in support of a fraud claim, Your Honor. Yeah, but they argue that that supports an inference, the fact that a lie occurred three years later supports an inference that the original representations were false. Well, I don't think that's a reasonable inference. I mean, this is a large format printer. This isn't the old Xerox machine that we grew up using. This is a substantial piece of equipment. It's a sophisticated purchaser in an arm's length commercial transaction. Every time a print head had to be replaced at Durst's print shop, a commercial printer, appointments had to be made, schedules had to be cleared, products were down. So for them to suggest that services were being concealed from them in their shop, in just belies common sense. And I think that when assessing plausibility, and Judge Erickson also made the point in her order, you assess whether plausibility on the factual allegations as a whole. So for them to come in now and make arguments that are not supported by the record, that somehow they were misled by actions that were occurring four years after the representation, it just doesn't pass muster, Your Honor. Who did the print head replacements? Who conducted them? Durst. Durst did the print head replacement in coordination with the purchaser. So they knew every step of the way exactly what was happening. And it's just implausible that, number one, I mean, it's a factual issue, so we're not going to resolve it here, but that they wouldn't have known the work that was being done. Is there a non-fraud explanation for the substantially greater rate of replacement than what was discussed prior to purchase? Absolutely. And there certainly—you talk about the cases where fraud was pled with particularity, the consumer cases that they cite in their briefs that we cite as well, Johnson v. Bobcat, for instance. Those dealt with non-variable representations. The snowplow will travel at X speed. It will hold Y number of gallons. Every time they ask questions—and it was always based on variable—it was always based on historical performance. What is your record? What is the print head life expectancy? And what our representative said, Your Honor, well, the worst case scenario that we found is X, and that depends on maintenance, customer usage, whether you're oiling—whatever the variables were, and there were variables, but it was never an assurance that Durst could expect the same level of performance because there were factors that were outside of our control. We're not there when they're operating the printer daily. So in terms of the—your question, is there a non-fraud answer for the level of heads that allegedly failed? I think they were running this machine 24 hours a day, 7 days a week. It's still in operation now. I mean, they're certainly still in business, and they still have the equipment and our knowledge still making quite good use of the equipment. I would go on to say, just because I didn't finish my point on Drobnik, which counsel made a point of referencing to the court, so not only did Judge Erickson point out in the order that they didn't support the information and belief allegation by saying that the facts were exclusively within our knowledge, she said that they couldn't do so. And why couldn't they do so? Because they have the printer. They're living with this thing for four years. I don't understand that argument, because isn't the fraudulent statement that we've only experienced X number of failures at the time that this sale occurred, that would be exclusively within your control? They wouldn't have—I mean, they know what happened to their printer, but they don't know what your experience prior to that was, right? If—if—correct, if. Okay. So then why isn't two things, the higher—the significantly higher than expected failure rate, plus the lies three years later, why isn't that enough that they should get to find out what your real experience had been at the time of the sale? Well, you've asked a loaded question, Your Honor, and I have to let you finish the question, but you characterized the experiential, the historical printhead replacement as the fraudulent statement, and that's where the record diverges from your question. The statement was only as to Durst's experience, its history, and there had been no follow-up. But importantly, they don't allege that our representative lied when he made that statement. They don't allege fraudulent intent with respect to that statement. They asked the question, what has the failure rate been on the new 1012 printer? We gave exactly the answer to the question. It's not this Court's job to say, well, they should have asked a follow-up. I'll tell you what else, because those—that question and exchange, Your Honor, was from the May 15, 2013 email. In that email, Mr. Gleiter, our sales representative, said there are 40—40-plus printers that are in service. I only have information on 14 in North America. Of the 14, here is the historical performance. The worst-case scenario I found was six. That's the statement. They don't allege that it's fraudulent. They don't— Well, paragraph 12 says, on information and belief, Ambassador alleges at the time Durst made the fraudulent misrepresentations, it knew that the Rode 11012 was experiencing significant printhead problems and that the fraudulent representations were not true. Isn't that an allegation that they were false? Well, if the Court were going to accept information and belief in support of a fraud claim and that it would pass muster under 9b, I guess theoretically it would, but that's not the law. I don't disagree with that. But my question is, when you take the fact that what they ultimately experienced was significantly greater than was, as they allege, represented to them, plus the subsequent lies, isn't that enough for an inference that it was known it was false? No. They don't allege that it was—they don't allege that it was false. They don't allege a statement as to the basis for that information and belief, as this Court required in Drubnik. They don't—well, they now in their briefs allege for the first time, because it's not in the complaint, that unique access or the possession of the fraudulent knowledge is in our possession. They do it in the briefs. They don't do it in the complaint. This Court's decision in Drubnik, which counsel believes supports their position— Says that it has to be in the complaint? It has to be—the statement upon which information and belief has to be in the complaint, tethered with the statement that the information is uniquely possessed by the fraudulent party. And that's not there. But what the Court pointed out in the Windows case, you didn't make the allegation, plaintiffs, you couldn't, because you had the Windows for, you know, since the sale. You could have done testing. You could have given specific specifications, which was, by the way, that's done in Johnson v. Bobcat. That's not in the other consumer cases they cite. You have comparative analysis. What did they actually receive? I'm kind of switching subjects in that, and I know my time is gone. But on Drubnik, you follow the case closely. It's a dead end for them. I would urge this Court to affirm the dismissal below. Thank you, Mr. Markell. I'm staring at 104. I'll try. Let me begin where we just left off on Drubnik. Gas was said to be between panes of glass. The plaintiff had the panes of glass. This Court said, you didn't even allege the gas wasn't there. Why didn't you look at the panes of glass and figure it out? I don't have panes of glass. Our representations were not as to a physical attribute of some product. It would work this fast, and it would only require this many head replacements. As the Court has pointed out, paragraph 12 says that was false. Chief Judge, you asked were there alternative non-fraud explanations for this. It's interesting. They said, yeah, it was a fluke. It could have been from changes made after manufacture or operating error, all fact issues, like much of what we heard up here from opposing counsel. What the district court did was made inferences in favor of the moving party, accepting those, and said, ambassador, you've got unsubstantiated evidence. It's like, wait a minute. This isn't Rule 56. This is Rule 12, and we pled enough between the falsity based on the experience, our experience. Yeah, but just because it didn't work out the way you wanted it to or expected it to doesn't mean that it was a false statement at the time it was made, right? I agree if it were simply a slight disappointment of expectations, but this is a radical departure. And I believe we have a right to see that they knew at the time they made the representations that our radical departure from the experience they represented was what they should have known. And with that, Your Honor, we ask that the district court's decision be reversed, and I do see my time is up. Thank you, Mr. Schiff. Thank you so much. Thank you also, Mr. Markov.